Yes, Your Honor. Good afternoon. Good afternoon. Thank you, and may it please the Court. In filing after filing in this case, from the plaintiff's complaint to their merits brief to this Court, the plaintiffs have emphasized that they are in long-term, serious relationships. A key factual allegation of their complaint reads as follows. Plaintiffs are gay and lesbian residents of California who are involved in long-term, serious relationships with individuals of the same sex and who desire to marry those individuals. Now, in May of 2009, when Judge Walker read the allegations of the complaint, he knew something that the litigants and the public did not know. For he knew that he, too, like the plaintiffs, was a gay resident of California who was involved in a long-term, serious relationship with an individual of the same sex. And at the time, in fact, that the complaint was filed, his relationship had endured for eight years, which coincidentally was the same amount of time that the plaintiffs Katami and Zarrillo were in their relationship. Now, again, the litigants did not have any knowledge of these facts, and it appears that Judge Walker made the deliberate decision not to disclose these facts, because as he gave interviews with the press and was asked about the rumors concerning his orientation and its relevance to this case, he declined to comment entirely. In any event, Judge Walker maintained his silence about these facts throughout the entire two years that he presided over the case until, after he had resolved the issues and had rendered his ruling, and after he had retired from the bench, he disclosed to a group of reporters that he was in a committed relationship that had lasted for, at that time, 10 years. Mr. Hightower. So a married judge could never hear a divorce? Excuse me? I'm sorry? So a married judge could never hear a divorce? Your Honor, I don't see why there would be a difficulty with a married judge hearing a divorce action. Would he have to disclose, oh, I've been married, and I've been married for 24 years, and we have a relationship that's kind of difficult? That's what you're arguing here. No, Your Honor, I begin with this proposition. I begin with this proposition, that if at any time during his tenure on this case, Judge Walker desired to marry his partner, then he would have occupied precisely the same shoes, he would have stood in precisely the same shoes as the plaintiffs before him. But we don't have anything, any evidence in this record of that, do we? Your Honor, to the contrary, we do have evidence that a reasonable person with knowledge of all the facts would Well, that isn't what I asked you. Do we have anything in this record, any evidence that that's what he desired to do? You all talk about if he desired, but I didn't find anything that said that's what he desired. Your Honor, what we do have in the record is that he was in the same kind of long-term same-sex relationship that the plaintiffs before him Well, the answer to my question is no, but we got some other stuff you think is important? We don't have any direct evidence, and that really is the problem, Your Honor, because Okay. I'm going to stop you, Mr. Cooper, because I've read your briefs, and I know all these facts that you're now talking to me about. What's the applicable standard or view in this case? Your Honor, it's abuse of discretion. And in an abuse of discretion case, Judge Ware made the decision, did he not? Yes, Your Honor. And so what is the standard I would use as to whether Judge Ware were wrong? Your Honor, I believe the standard you would use is whether or not he made an error of law. So you're going to go with an error of law? What about the facts that he found? Your Honor, we believe those facts The facts. What about the facts? What's my standard of view for the facts? We'll come back to what law he erred in applying, but what's my standard of view for the facts, Mr. Cooper? Your Honor, the standard of view that you would defer to the facts. In fact, they have to be illogical, implausible, and without support. Isn't that true? Your Honor, the court's review standard. That's the Hinkson standard. Yes, Your Honor. All right. So in this particular case, if it had come to us immediately and we had decided the case, then we would apply a plain error review. But we didn't do that. That's what Hollins suggests. What we said is send it back to the district court and have the good judge make that determination, and then we'll decide whether he abused his discretion. And one way to abuse it is to have a problem with the correct application of the law. But another is on facts, correct? Yes, Your Honor.  If we can move to the next case, we'll go to Judge Ware. Okay. So if that's the case, what is the correct legal rule Judge Ware did not apply? Your Honor, he did not apply correctly the test under 455A. The test, that doesn't say anything. Tell me what it is. What didn't he do right? I beg your pardon? What rule did he not apply? What part of 455 did he not apply right? What law? I mean, I saw that he quoted the law under 455. I saw that he then tried to apply the facts to that law. But I don't know what law he did not apply correctly. Your Honor, we submit to you he did not apply the objective test under 455A. The objective test. You're right. Yes, Your Honor. What is that? What did he have to do to apply the objective test? He had to apply the facts that are known, keeping in mind the key facts that are not known and that have, in fact, not been disclosed by Judge Walker. And at that point, this being not the judge in the normal case, which would have his own recusal motion in front of him, but a judge who was not in the normal case. He was then applying the law as related to another who was being challenged. And as I understand it, you suggest that that question then is another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances. Would you agree with that? I agree that that is the test that is required. There is another. He doesn't know whether the judge is actually impartial. And now he decides, and I suggest as a matter of fact, not law, applying this law that you suggest, that there are no reason that I can't reasonably question the impartiality on the basis of all the circumstances I have in front of me. So why should I undo that? Your Honor, because ---- Is that an abuse? Is that implausible? Is it illogical? Does it have no support or inference in the record? Your Honor, it is an error of law in the application of 455A. There is no such ---- Now, just a minute. Just a minute, Mr. Cooper. Mr. Cooper, what case do you have that the application of the law to the facts is a de novo review? Yes, finding the law is de novo. And if he applies the wrong law, it's de novo. But what case do you have that suggests that the application of the law to the facts is de novo? That's what juries do every day. And that's a question of fact. And in this case, Your Honor, we submit to you that the court, the lower court, Judge Ware did abuse his discretion in applying the law. So what he did was illogical? It was implausible? It had no support in the record? Your Honor, it was entirely inconsistent with an objective standard applicable under 455A in which a reasonable person with knowledge of all the facts, whether or not that reasonable person would conclude that the judge's impartiality might be questioned. Might be questioned. Well, I guess my worry about this is you all borrow from Holland what Judge Bybee said. This was a case that never went before the trial court at all. Judge Bybee was trying to review this for plain error. And he goes through this like there isn't any standard to review whatsoever. I mean, he just cites the objective. But I read all the cases we have on this. And it says abuse of discretion. And then I tried to determine what it was that could be abused. Well, it isn't an abuse to apply law to facts. It isn't a de novo review there. It isn't a de novo review to determine what the facts are. The only thing that's de novo is to determine what the law is. And he applied all the law you have cited to me. Your Honor, the Holland case is a good example where the court did apply the plain error test, which is a stricter standard, Your Honor, than the abuse of discretion test. And we don't have Holland in front of us, do we? Because this is not the same as Holland. In Holland, the district court never ruled on anything. Well, that's true, Your Honor. The only thing that happened was that the circuit court, because the appellants didn't say anything to the district judge, had to make that determination themselves. Your Honor, in the 455A cases, all of the cases that I can think of, the courts of appeals have applied the facts that are known using the reasonable person standard, the objective standard under 455. Well, and that's what Judge Wehr did. And after he got through, him being a reasonable person and not the one involved, came out and said, you know, I don't think that that's something he should have recused himself. And, Your Honor, we're here to submit to you that Judge Wehr erred in an application. One question, Mr. Cooper. You talked about what the reasonable person would know if he knew all the facts. And then when Judge Smith asked you about the facts that were known, you said all the facts except whether he had an interest in getting married. Yes, Your Honor. So what do we look at? Do we look at whether the reasonable person would look at all the facts that you have mentioned other than the fact that he's interested in getting married, which is not a fact that would be known? Your Honor, you would look at all these facts that are known, the only facts that a reasonable person would have available to him, and the key point being that the standard itself requires that all the facts be known. It requires that the judge disclose all relevant facts. Yes, but again, Mr. Cooper, one more time, the rule says that all facts have to be disclosed. Yes. But the rule also suggests that someone, not knowing whether or not the judge is actually impartial, must determine whether an appropriate disclosure was made. And Judge Ware made it, and he said an appropriate disclosure was made. Your Honor, the law is as clear as it can be that the obligation is on the judge to disclose all the facts that are relevant to the issue of disqualification, all facts known privately to the judge. And who determines whether he did that or not? Not the appellate court. Well, Your Honor. Not here on appeal. We sent it back to the district court. Your Honor, there's one thing that simply can't be disputed, and that is one of the things that Judge Walker was obligated to disclose was whether or not he had an interest in marrying his partner. That was one of the things. And we know he didn't. Wouldn't the rule be that if he had an interest in marrying his partner, he was required to disclose that? Why is he required to disclose a fact that doesn't affect his impartiality? Your Honor, because that fact, that fact is relevant to the issue of disqualification, that fact. And Judge Walker knows the answer to that fact, and we don't. And those who are charged with attempting to determine whether or not Judge Walker had an interest in the outcome of this case would have to know the answer to that fact. And all of the other facts strongly suggest, strongly suggest to a reasonable person in possession of all of the other facts that Judge Walker did and was very likely to have had an interest in marrying his partner. And in light of that, Judge Walker could not have said, had he stepped forward, as the law required him to do when this complaint was filed, and he read these allegations, to say, to disclose the fact that he ultimately disclosed after his retirement, had he done that, he would not have been able to say in response to my question, Your Honor, do you have an interest in marrying? He wouldn't have been able to say. You would have examined him on that? He would have been asked that question, yes, Your Honor. That is the question that would naturally have been asked. In what proceeding would he have been asked that question? I'm sorry? In what proceeding would he have been asked that question? Your Honor, the law requires that the facts, any and all facts known privately to the judge that are relevant, or in fact, one court of appeals has said any fact that the judge believes that the parties and the lawyers would consider relevant to the question of disqualification must be disclosed, and they must be disclosed on the record. And so if Judge Walker had disclosed the fact of his ten-year-long same-sex relationship, one that placed him very nearly in the same shoes of the plaintiffs, he would have been required to answer the question that naturally and obviously would be raised by that in this case. And it would be in that proceeding. In light of your argument, what do we make of the fact that during the interregnum period, if you will, he didn't get married? In the period what? Yeah. Between the time that the California Supreme Court said that the statutory ban on same-sex marriage violated the California Constitution and the time that Proposition 8 was passed. Yes. I refer to that as the interregnum period. Yes, Your Honor. I follow you now. Okay. What do we make of the fact that apparently he did not get married during that period? Your Honor, no more do we make of the fact that he did not than we make of the fact that the plaintiffs themselves did not. It certainly isn't inconsistent with the desire to get married, as we know from the plaintiffs themselves. And they have explained why it is they did not seek to get married during that interregnum period. Had he gotten married during that period, would he have been required to affirmatively disclose it? Your Honor, I my ---- Looking for a yes or no, Mr. Cooper. Yes, Your Honor, I believe he would have, although I do not believe that in that under those facts there would be an argument that he was in violation of 455b-4, because his interests could not then be affected by the outcome of the case. But it does seem to me, Your Honor, I would submit that under 455a, a reasonable person in possession of those facts might well reasonably question his impartiality. But that's an entirely different question. Here, Judge Hawkins, the question is whether or not he was in a position essentially to judge his own case. Let me ask you this. If that's your argument, if Judge Walker actually did not have any interest in getting married, is there any authority that would require Judge Walker to disclose that lack of interest? Yes, Your Honor. I believe that that is a fact. It is relevant to the question. And, in fact, Your Honor, if Judge Walker had ---- What case would tell me that? I think, Your Honor, all the cases that say ---- Aren't disclosure? The cases on disclosure, yes, Your Honor. The cases that make clear that the burden is on the judge, it's on the judge to disclose information known only to the judge that might be relevant, would have potential relevance to the question whether or not the judge has an interest in the outcome of the case, something that, if he does, B-4 clearly requires his disqualification. And even in a case where the judge may not have an interest in the outcome of the case, if a reasonable person with knowledge of all the facts would conclude reasonably that he might have such an interest, then the judge would have to be disqualified under 455A. And Littleburg is clear on that. Are you saying that now, if he had said that he did not have an interest in marriage or he doesn't comment on it, that then he must be recused anyway? Your Honor, I think there would be three basic answers. He could have said, I'm in this 10-year, 8-year then same-sex relationship, but I have no interest in marriage. Your Honor, this case wouldn't be here if that had happened. We would have taken him at his word, and the case would have moved on. If he had said, I do have an interest in marriage. Well, the question isn't that. The question is, what if you disqualified him for that? Would that be a reasonable basis for disqualification? Your Honor, we – it is not our position that that – that that would be a reasonable basis for disqualification if he had no – if he disavowed an interest in marriage. But if he said he is interested in marriage, then we would submit it would follow indisputably that he would be sitting in judgment of his own case and would have to be disqualified under B-4. The other possible answer would be, maybe I do and maybe I don't. And that is an answer that he could not give, Judge Smith. The cases on disclosure – and Your Honor, I would submit to you it has to be obvious that a judge in possession exclusively of private information has to be responsible to disclose that information or, if the information is private or personal, which is not the case here, but if it is, then the judge has the option of simply deferring the case to the next judge on the wheel. Well, if there is any gay judge who maybe has a short-term relationship and he is in a romance, he doesn't know at this point whether he wants to marry this person or not. Or he is not in a relationship. He doesn't know whether he is going to get – want to be married or not. It is a perfectly normal thing for people to want to get married. And if you were able to get married as a gay person, just as a heterosexual person, you might have a general interest in getting married someday. Does he have to say, no, I will – I have no interest in ever being married? Or suppose he says, yes, I imagine someday if I meet the right person, I might want to get married. What does that do to your case? Your Honor, the issue under 455A in case after case is whether the judge has a direct and concrete interest in the outcome or whether the judge has a potential but remote, contingent and speculative interest. And a judge who is in a 10-year long committed relationship, as I say, the question that is naturally and obviously begged in that situation, as the plaintiff's own filings one after another make clear, is whether he wants to get married. But a judge that is not in a relationship, uncommitted and single, would not be under that disclosure obligation, we would submit, because 455A does not embrace those potential interests that are remote, contingent and speculative. I mean... Scalia. Quick question on that I hope doesn't eat into your rebuttal time, Mr. Cooper. Was the question of whether Judge Walker had made full disclosure in your contentions that he had not before Judge Ware? Cooper. Yes, Your Honor. We were clear on the point that... Scalia. And did Judge Ware make factual findings about whether Judge Walker had an obligation to disclose the things you're arguing that he should have? Cooper. I don't believe he made a factual finding. He made a conclusion of law that he was not obligated to do so. And that is a conclusion... Scalia. Well, that's your idea. But he did make a conclusion, whatever it is, legal or factual, about those situations, correct?  Your Honor, we would submit... That is correct. We would submit...  What if this married heterosexual judge desires to maintain the definition of marriage as it applied to their marriages? Would he have to disclose that? Your Honor, we have, from the beginning of this case, disavowed any claim that an individual marriage would be harmed by a ruling that same-sex marriage is a constitutional right. We've disclaimed that. And so the answer to your question is no, Your Honor. So what about the unmarried heterosexual judge who still determines that he wants to maintain the definition of marriage as it applied to his marriage? Would he have to disclose that? Your Honor, I don't see any basis on which that judge would have an interest in the outcome, a concrete and substantial direct interest in the outcome of the ruling, whatever it might be, on the issue of same-sex marriage. So no, the answer, Your Honor, I don't believe he would. You said that you haven't argued that allowing same-sex marriage in California would have innumerable negative effects on the institution of marriage? No, Your Honor, we have said that. We have said the institution of marriage, we believe, would likely be negatively affected by... Doesn't that mean, and thus on the people who are a part of that institution? No, Your Honor. We, again, do not believe that any individual marriage, my marriage, your marriage presumably, is not going to be affected in one way or another by... By what the institution is when it's adversely affected? Your Honor, in decades... I mean, if I said to you after today, marriage doesn't mean anything, the institution is worthless, it doesn't distinguish people who are married from people who are unmarried. In fact, the institution is now looked at negatively instead of positively. That wouldn't have any effect on those of us who are married? Your Honor, we are concerned that those would be the effects of Judge Walker's and we have disavowed the notion that any individual marriage is going to be negatively affected. The institution, yes. And in years and decades down the road, we believe those effects will be manifested. Your Honor, but presently, I have a hard time understanding how if the institution of marriage is immediately negatively affected, that doesn't affect the people who are married. Your Honor, we haven't even said that we believe that it's likely that it would be immediately negatively affected, but we do believe that the institution, over time, would be negatively affected. But that would not translate into an individual heterosexual married judge having a direct interest in the outcome of the case. Just a gay or lesbian judge in a long-term relationship that desired to marry would have an obvious and clear direct interest in the outcome of the case and would be sitting on his or her own case, Your Honor, which the law would not permit. My time is up. I do hope that maybe a moment or two for rebuttal, but thank you. Yes, we'll give you two minutes for rebuttal. May it please the Court. My name is David Boies, and I represent the plaintiffs. I want to begin by reminding the Court that every case cited by either side in this matter where recusal was ordered is a case where either one, the judge involved, had taken a position on the issues at stake outside the record of the case, or two, the judge had a personal, fiduciary, or pecuniary relationship with a party or counsel in the case, or three, the judge had relied on a clerk or other court-appointed consultant who was himself or herself conflicted. Judge Walker, of course, was not himself a party to the case below. He had not taken a position on the issues at stake outside the record of the case. He had no personal, fiduciary, or pecuniary relationship to any party or counsel in the case. No conflict is asserted with respect to any of his clerks. Defendants cite no case, none, where recusal was required under those circumstances. Instead, they posit a new rule without precedential support where minority judges must recuse themselves from actions seeking to vindicate constitutional rights because the precedential effect of a favorable decision would enable the judge, in common with many others, to exercise those rights. No case, none, so holds. In fact, the law is to the contrary. Even in cases where the judge or the judge's children are legally parties to the matter before the judge because it's a class action and they're members of the class, the courts have ruled that the mere fact that the judge, along with many other members of the class, may benefit from a favorable ruling, that is not sufficient to recuse. And, indeed — Your position is that if Judge Walker had disclosed during the litigation that he planned to get married as soon as the case was over, he would still not be recused? I think that is the law, Your Honor. And the Fifth Circuit in the city of Houston and the Eleventh Circuit in the United States against Alabama, and I quote their holdings. They each use the same language. Quote, an interest which a judge has in common with many others in a public matter is not sufficient to disqualify him. It seems to me that the rule of law that the proponents suggest here is not necessarily the one you're addressing, but the failure to disclose. But, Your Honor, I think the cases are clear that if something is irrelevant, you don't have to disclose it. That's the first point. The second point, which is a factual point, is that there is no authority at all that says the judge had to disclose something that would not have been a basis for recusal. And there are two aspects of that. First, the judge, if he had no interest in getting married, defendants say he shouldn't be recused. If he had no interest in getting married, he didn't have to say that. We believe the law is, even if he did have an interest in getting married, that's not a basis for disqualification. In either of those cases, there is no basis to require a disclosure of something that is not a basis for disqualification. And it's my understanding, upon reading the law, that it is that judge who is then reviewing the case to determine whether there is a basis. Exactly right, Your Honor. Which is a question of fact. It is, Your Honor. And the Court referred to the Holland case. And, of course, the Court in the Holland case emphasized that disqualification under 455 is necessarily fact-driven and may turn on subtleties in the particular case. That's why the appellate court defers to that judgment made by the district court, particularly where the district court is not the court that has been the subject of the recusal request. Now, defendants claim that their proposed rule is not necessarily targeted at minority judges. But the lines they draw say differently. In response to this Court's questions, Mr. Cooper said that a heterosexual judge, even one committed to the institution of marriage, not merely their own marriage, but the institution of marriage, did not have to disclose that and did not have to be disqualified. It is in the nature of constitutional discriminations that there is a discriminated class and a majority class and that both believe their rights are at stake with respect to that issue. As the Fifth Circuit said in the city of Houston, for every class that claims to be injured by an action or policy that is the subject of declaratory relief, there is a counterclass that by definition must be benefited. Indeed, in this case, the defendants have passionately argued that permitting gay marriage so threatens, so terribly threatens the institution of marriage, that gays must be deprived of the substantial benefits that even the defendants' own experts at trial testified would offer gay couples and their children. Under those circumstances, any heterosexual judge who believes in the institution of marriage should, by logic, by the defendants' logic, have to disclose that and have to be disqualified. In fact, the perverse result would be that only judges, gay or straight, who had no interest in marrying and no interest in the institution of marriage would be qualified to hear the case. Defendants deny that that's the result of their rule, but that denial emphasizes that their proposal is, in fact, and inevitably and by definition targeted at minority judges. Because what is involved is an effort to determine whether a minority ought to be admitted to an institution or activity from which they have been excluded. Cases seeking to vindicate a minority's constitutional rights typically raise the question of whether it is permissible for a majority to exclude that minority from an institution or activity. Is it, for example, permissible to exclude African Americans from particular educational institutions? Is it permissible to exclude gays from the institution of marriage? The majority typically defends the exclusion by asserting that the exclusion is desirable to preserve the quality or stability of the institution, that the exclusion is supported by tradition, that the exclusion is based on religious faith. All of these arguments were used to support excluding African Americans from traditionally white institutions. All of these arguments have been used to support excluding gays from the institution of marriage. When defendants assert that a minority judge who has an interest in participating in the institution at issue must be disqualified, and they claim that if there's no evidence of whether the judge has that interest, which is the case here, the judge is required to disclose his or her desires, defendants argue that since many members of the minority will have an interest in participating in the institution, the only way to know whether a particular judge does or does not have such an interest is to compel disclosure of the minority judge's desires and to disqualify the judge in the absence of disclosure. Consider what the implications of that rule are, not to minority judges, but to all judges and to our judicial system. Many majority judges, like the majority generally, may believe that the exclusion of the minority from their institution is important to preserve the quality or stability of the institution or as a matter of tradition or even religious faith. Consider how disruptive it would be and how corrosive to the public's faith in our justice system if every majority judge were required to affirmatively disclose whether she or he had a personal interest in preserving the institution without change, particularly with a necessary implication that that required disclosure meant that the judge could not be impartial. But consider how intolerable it would be to rule that the possible interest of a majority judge in preserving the status quo is irrelevant to recusal, but that a minority judge's possible interest in changing the status quo requires recusal. It is for this reason that every court to consider the issue has ruled that an interest that a judge has in common with many others in a public matter is not sufficient to disqualify him. That is the law. Even if that were not the law, on the facts of this case, there would still be no basis for recusal or forced disqualification. Because on the facts of this case, Judge Ware examined the legal principles, faithfully articulated the law, and then applied those legal principles to the facts in this case, concluding that based on the facts in this case, there was no basis to question the impartiality of Judge Walker. And what do we have from the defendants? They say he's in a committed relationship, and they cite a statistic that says a certain number, a certain percentage, 64 percent, they say, from the record, of gay couples are likely to get married. Now, that statistic says nothing about whether the length of a relationship has anything to do with the likelihood of marriage. And it says nothing about whether that percentage is higher or lower than the percentage of gay people generally who will want to get married. And that, too, is dispositive, because they concede, defendants concede, that the mere status, the mere fact that Judge Walker was gay would not be enough to disqualify him, even though many gay people want to get married. Defendants say the dispositive thing, the thing that makes it different, is that he was in a long-term relationship. But the fact that he was in a long-term relationship says nothing about whether that makes it more likely or less likely that he will want to get married than any other gay person. And if you look at the underlying exhibit that they have, and you look at the demographics of gay couples who tend to get married and gay couples who tend not to get married, the demographics simply don't match Judge Walker and his partner. So there's nothing in the record that suggests that Judge Walker is any more likely to get married than any gay person. And that is a fundamental and irremediable flaw in the argument that they make as a factual matter, even if they were right on the law, even if the legal principle that I think is applicable from the city of Houston and the United States against Alabama, which is that an interest that a judge has, along with many others in a public matter, is not sufficient to disqualify them. Well, Mr. Cooper was asked that question and answered it. And he said we've made it very clear that we don't take the position that simply because a judge is gay and may want ultimately to get married or think he does, we distinguish that clearly from a judge who has an eight-year relationship. And you say, I understand what you say about the eight years. That may make you less interested in getting married. He said neither. But I thought about it. I understand that. But Mr. Cooper then goes on to say he has a more particularized interest, if I understand his argument. And on rebuttal, I'll ask him to respond to what you're saying. Well, he says where it's a really particularized interest because there's a particular person that it seems likely you may want to marry. That takes you out of the general class of people who may someday hope to get married. And that's a very clear, key distinction in this case because Mr. Cooper says this would not apply to gays in general. He would not ask this simply because Judge Walker was gay. He says the basis of his position is that it is reasonable and likely that somebody who has in a particular relationship will have a desire. And he would add the eight years is a plus, whereas others might not. But it's not unreasonable to assume that the eight years may relate to the particularized relationship. Now, I understand that your view would be no matter what, it wouldn't establish a reason for recusal. But do you think that, other than the fact that you say that it could never be a reason no matter what, do you – and you say that the eight years doesn't prove much. Does it – is there anything to Mr. Cooper's argument that there is a specific relationship that the judge should have told us more about? Your Honor, I think that is just conjecture and speculation of exactly the kind that Mr. Cooper otherwise disavows, because there is simply no evidence. And this goes back to the findings that Judge Ware made as well. But there is simply no evidence that Judge Walker, because of that relationship, is any more likely to want to get married than any gay person in California. Well, Mr. Cooper's point is that it's the absence of that information raises an obligation on the part of the judge to disclose whether he wants to get married or not. He says it's relevant because it makes the decision – it allows the public to determine whether there is a reason for recusal. You don't have to – that applies not only to saying, yes, I am – yes, I do intend to get married, but that there's an obligation to give the public the information which would allow it to make a judgment, including, no, I do not intend to get married. Your Honor, I don't see anything in any authority that says somebody has an obligation to say, I do not intend to exercise the right in question. And – Well, if that's relevant to the determination of the public to know whether he does or not, is it not just as relevant to know he does not as to know that he does? No, Your Honor. I don't think so, because let's assume that there is an obligation if he had an interest in getting married to disclose it. Let's assume that for the purpose of the question. Judge Walker, by not disclosing that he has an intent to get married, is not in any way infringing on that principle. In other words, even if he had an obligation to disclose an intent to get married, he doesn't have an obligation to disclose a non-intent to get married. And if you look at the pernicious effect that such a rule would have, because you would be singling out – you would be creating the double standard for minority judges that The courts in the city of Houston, United States against Alabama, and a whole series of cases that we've cited in the court, have said would create an intolerable double standard. Because a majority judge, a heterosexual judge, may feel passionately about preserving the institution of marriage. Does that judge have an obligation to volunteer, to come forward and tell the parties what his views of marriage are and his views about the independent – the institution of marriage and what the effect would have? If not, then what you are doing by the rule that Mr. Cooper advocates, simply creating a double standard, and it is going right in the face of the cases that have repeatedly held that minority judges, just like majority judges, are presumed to be impartial. And that if you don't have the standard issues with respect to personal pecuniary interest, a relationship with the parties, a problem with your clerks, or making statements about the issues at stake outside of the record, that the mere fact that you share a common interest in exercising a constitutional right and the fact that a decision may have a presidential effect in terms of permitting you to exercise that constitutional right doesn't have anything to do. And I need to stop because I'm getting into Ms. Stewart's time. And I just want to end, though, by emphasizing that even if the Court rejects everything that I'm saying as a matter of law, it is still the case that Judge Ware looked at all of these issues and made a decision that under the circumstances and the facts of this case, there was no reasonable basis for challenging or suspecting Judge Walker's partiality. Thank you, Your Honor. Thank you. Good afternoon. If proponents' view were correct, then, about disclosure, then a woman judge who was of childbearing years, who was hearing a case having to do with the right to choose whether to have an abortion, would have to disclose that and say, I have no intent ever to exercise that right. A male or female judge of child conceiving years would have to disclose in a case about family planning whether they would have to disclaim any interest in ever using contraception. Well, Mr. Cooper is trying to make an argument, and I don't know how successfully, but he's trying to make an argument that distinguishes your case from a woman who say is on the verge of having to make a decision about whether to have an abortion or not. He's saying that kind of a woman is in a particularized situation that distinguishes her from just the run-of-the-mill woman who may someday have to make a decision about abortion in her own case, but isn't on the verge or on the brink of that kind of a problem, that when you are removed from the general category, the general class, and, Mr. Cooper, I may not be putting this argument of yours as clearly as you will on rebuttal, but he is trying to make the distinction between someone who's in a very particularized circumstance as opposed to someone who's in a general circumstance by the whole group. If I could address that, Your Honor, let me step back for a minute, because this motion harkens back to a longtime theme of those who espouse treating lesbians and gay men differently from all other Americans, and it's that there's this distinction between gay people's, quote, conduct and their identity. And the idea is that the conduct that they're condemning is the act of having an intimate relationship with someone of the same gender. I don't hear Mr. Cooper to have argued that at all. I think he's saying that it's Judge Walker's relationship, not his gay identity, but it's not his relationship in the abstract. It's a relationship with the same sex, with a person of the same sex, and then he adds to that the duration of the relationship, because he's trying to say that he's likely to get married. That's certainly not talking about the same sex. That does not distinguish Judge Walker, Your Honor, from any other gay person, or for that matter, from any other American. Every gay person has a right to – has an interest. You know, you're making the argument that Mr. Cooper is trying to disavow, and he is saying, I'm not saying that this applies to every gay person who may someday want to get married. I'm saying, if I understand Mr. Cooper, that this is a – when you get to a particularized person who may or may not, I don't know, want to get married the next day, you apply a different standard to that than you do to someone who may want to get married in 10 years and has no particular desire to get married at the moment. Yes, Your Honor, but the distinction that he's trying to make doesn't work. Heterosexual people sometimes meet each other and marry within months. Heterosexual people sometimes wait many years. The duration of a relationship – That's correct. He's not distinguishing, but he would make the same argument if he were making an argument against heterosexual marriage. He would be saying, you know, of course, every heterosexual may someday decide he wants to get married. But this is a heterosexual who was on the brink of marriage, and that gives him a different view of the case than – But, Your Honor, there's no evidence of that. It is mere speculation. There's not one iota of evidence. And what he's asking is for the Court to turn the presumption on its head. The presumption is that judges will be and are capable of being impartial. If you say that if a judge doesn't get up and disclaim any interest, we presume that he will be unable to be impartial, then you're turning the presumption on its head. Okay. Now we're up to the real argument, not saying that, you know. And Mr. Cooper's answer to that is that there is a – the burden is on the judge to show when there are circumstances it's his burden to come forward and say, give you the facts that will allow you to make the judgment. We don't impose that type of burden. First of all, the standard he's talking about, 455A, is an objective standard, not a subjective standard. We don't impose on judges in any other context an obligation to disclose specific circumstances of their intent to exercise a right. We don't require – in fact, in the case of – not the Houston case, but the Alabama case, the judge's children were 9 and 16, and all the judge said there was, my kids haven't told me yet that they want to go to this university. But it could be that a year later his – It wasn't more – they didn't say they tell me they don't want to go to the university? Correct. That was all that happened in that case. And the Court said even if their – the kids had wanted to go to the university, it's a right that they share in common with a large group of people. And the Court didn't assume, because the judge didn't disclaim that they would ever go to that university, or even maybe within the next year or two for the 16-year-old, that it meant he was biased. The courts don't impose that standard on any other minority or on majority judges to go into the intimate circumstances of their lives. The closest case that I can think of in a certain way is one involving Judge Noonan, who was asked to be disqualified because he was Catholic and because I believe the case involved abortion. And the idea was he couldn't distance himself from his religious beliefs. And the parties argued, well, it's not just that he's Catholic, it's that he has fervently held beliefs because he speaks out on issues of his religion all the time. And Judge Noonan disagreed. He said, you can't – it's unworkable to try to get a judge to decide what his intent is and to have a – to basically put a subjective standard into this test of whether we disqualify a judge. And the – But it is a little bit different, isn't it, where the disclosure would reveal a benefit to be derived from the ruling in the very case, right? I don't think it is, Your Honor, because, again, the Alabama case, the Houston case, and a whole host of other cases, but particularly those two, and cases involving an Alaskan judge who stood to benefit from a ruling on oil royalties that Alaska distributes to its citizens, but also the school – the children in the school and the voters in the Houston case, the judge was a member of the class of voters who claimed their votes were diluted. And in all of those cases, the Court said, when you share an interest in common with a large group, it doesn't matter whether you might benefit from the ruling. We're not going to require recusal in that situation. We don't require it in the case of judges of majority status. We judge judges as individuals. That's what equal protection requires. We don't stereotype them. We don't assume that because they're gay, because they're in a relationship, because their relationship is of a certain duration, that they can't be fair and impartial just because they're part of a group that might, in the end, benefit from a civil right. And as Judge Weir said, I think, very eloquently, every person has the same interest in having an injunction against a law that violates constitutional rights. We don't say that the majority benefits any less from that than the minority. And a rule that would require minorities to recuse themselves on that circumstance is an intolerable one. It assumes – and here, there's no facts indicating that Judge Walker intended to get married, and we have to presume that he had no intention that would get in the way of his being impartial in the case. That's what the presumption of impartiality requires. Frankly, I think the advocacy of this motion is setting a double standard, and it really shows essentially one thing, which is that even though in all of these cases involving blacks, women, and a lot of times they were argued to have very specific connections to the issue at hand, and the courts again and again rejected the idea that they – that made them impartial, and the proponents just can't get it through their head that different rules don't completely apply to gay people because they think that ordinary rules don't apply and gay people are inferior, and this motion is an example of that. The cases are uniform, and they shouldn't be bringing this motion, and I would ask the Court to affirm Judge Weir's decision. Even in a case where a ruling upholding Proposition 8 would mean that he could never get married? Even in a case where it would mean that he could never get married? Yes. Yes. He's not disqualified. He fairly and impartially considered the evidence, weighed the evidence, and frankly, it goes back to the other motion, you know, the claims about unfairness. But basically, there's no indication here that Judge Walker was unfair, and this is a case where he's presumed the opposite, and it can't speculate, hypothesis, conjecture, which is all that they have here, and stereotyping, basically, that gay people in relationships are likely to want to get married. And we don't do that in our society. We don't rely on stereotypes, and it would eviscerate the justice system. I don't know about stereotypes. I mean, you can make the same presumption with heterosexuals. It doesn't have anything to do in this case with discrimination against gays. The question of whether you can presume that people want to get married in society, and the presumption would be that gays like heterosexuals want to get married. Every gay person wants to get married. Okay. Well, that's, you know, Mr. Cooper says we're not talking about gays who want to get married. We're talking about a particular person who may be on the verge of wanting to get married. Maybe on the verge. Yeah. Now, and he says, then his next point is that when you have under 455, when you don't have the information that's only known to the judge, that would be material, that the judge has the obligation to come forward with that. Now, it may not be right. I'm not, I'm just trying to say this is not an argument that all gays are accused because they're gays. It's awfully close, Your Honor. In the Alabama case, and I'll just end with this, the court said that saying that a judge who had children who might attend, have the right or opportunity to attend a desegregated university someday comes awfully close to disqualifying every minority judge. And the same thing is true here. Gay people all want to see a law like Prop 8 that stigmatizes all gay people go be enjoined, and they all have a right to make the decision someday whether they marry, whom they marry. And there's no evidence here that there's any more immediate interest on the part of Judge Walker than any other gay person. Thank you. Mr. Cooper, we said we'd give you two minutes. Your Honor, I beg your indulgence, perhaps for a little more. But in any event, let me address your question, Judge Reinhart. Yes. I'd like to know particularly if you have a case that says that the burden is on the judge to come forward under these circumstances with the information. Your Honor. Positive or negative? The cases make clear that if the information is relevant to the issue of disqualification. And it is – I would submit to you it's clear that the question whether or not the very outcome in marrying is relevant to the issue of disqualification. But your Honor, Judge Reinhart, you accurately did characterize our argument. And the point I want to make here is that in filing after filing, it is the plaintiffs who have stressed the long-term nature. Here's what they say. Plaintiffs are gay and lesbian residents of California who are involved in long-term serious relationships with individuals of the same sex. Plaintiffs Perry and Steyer are lesbian individuals who have been in a committed relationship for ten years. Plaintiffs Gattame and Zerillo are gay individuals who have been in committed relationship for eight years. One filing after another makes the common sense point, not difficult to grasp for anybody, that a person in an enduring committed relationship is – raises the obvious question, do you have an interest in getting married? And it was the plaintiffs who introduced evidence that in the state of California, 64 percent of all committed gay relationships would ultimately seek to get married, 64 percent. That wasn't our evidence. It was their evidence. And it was based upon the committed, long-term nature of the relationships at stake. Judge Reinhart, you are correct. These are things that raise the issue. I am glad that counsel for San Francisco and the plaintiffs have raised the Alabama case. Because in that case, Judge Hawkins, the court emphasized this, the Eleventh Circuit. There is no evidence that Judge Clemon's children have any desire or inclination to attend a Montgomery area institution. The institution's at issue there in that higher education desegregation case. Judge Clemon had made clear, he acknowledged his obligation to disclose personal facts. And he said, I have no evidence that my kids want to go to these institutions. Is it the plaintiff's position that if Judge Clemon's had come back and said, my son has an application pending at those Montgomery institutions, that would have made no difference? That he could have sat on that case? That is an appalling proposition. And it would bring the federal judiciary and its integrity low, your honors. And there is no case anywhere in American jurisprudence that says a judge that is a He can sit on his own case. There would be no problem, that we are aware of anyway, for Judge Walker to have sat on don't ask, don't tell. Even though he's gay, even though he's a minority. Because as far as we know, he would have no interest in the outcome of the case. But if Judge Walker was ruling that he has a constitutional right to get married to his 10-year-long partner, as soon as his ruling is affirmed, if it is by this court, then if this court does not say what they urge you to say, that that's just fine, this will be a signal and dark day in American jurisprudence. Thank you, Mr. Cooper. Well, let's hope, however, it comes out, it won't be a dark day in American jurisprudence. Thank you all very much for the arguments. The court will stand adjourned.
judges: Reinhardt, Hawkins, Smith